2009R01422/ADL/JTE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Criminal No. 13- $651$ |
| | : | |
| v. | : | |
| | : | |
| | : | 18 U.S.C.§§1952(a)(3)and 2 |
| GARY SAFIER, M.D. | : | 26 U.S.C.§7206 |
| | : | |

## I N F O R M A T I O N

### COUNT 1
#### (Bribery in violation of the Travel Act)

1.   At all times relevant to this Information:

a.   Defendant GARY SAFIER was a medical doctor licensed to practice medicine in the State of New Jersey who did so through a medical practice owned and controlled by him located in Randolph, New Jersey (the "Medical Office").

b.   Biodiagnostic Laboratory Services, LLC ("BLS") was a clinical blood laboratory headquartered in Parsippany, New Jersey that, among other things, performed tests on the blood specimens of patients referred to BLS by doctors, and then billed payors and others for those tests and related services.

c.   Peter Breihof worked for BLS.

d.   David Nicoll was an owner and the President of BLS, and generally directed and supervised Peter Briehof's activities at BLS.

e.    The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

f.    The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled. The Medicare Part B program paid for various medical services for beneficiaries, including blood tests and related services.

g.    BLS was an approved Medicare provider, and Medicare paid BLS for performing blood tests and related services on beneficiaries who were referred to BLS by physicians participating in Medicare.

h.    Private health insurance companies (hereafter, "Private Payors") including Horizon Blue Cross/Blue Shield ("Blue Cross/Blue Shield"), were corporations in the business of providing health care insurance to individuals and entities under various insurance policies (the "insureds"), pursuant to which Blue Cross/Blue Shield and other Private Payors paid BLS for blood tests and related services performed for

insureds who had been referred to BLS by physicians participating in their provider networks.

2.    From at least in or about August 2007 until in or about March 2013, in Morris County, in the District of New Jersey, and elsewhere, defendant

GARY SAFIER

knowingly and intentionally used and caused to be used the mail and any facility in interstate commerce with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is, commercial bribery, contrary to N.J.S.A. §2C:21-10 and Title 18, United States Code, Section 1952(a)(3) and, thereafter, did perform and attempt to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, to include, as follows:

a.    Beginning in or about August 2007, Peter Breihof, with David Nicoll's knowledge and approval, offered, and defendant GARY SAFIER accepted, bribes paid to induce defendant GARY SAFIER to refer the blood specimens of his patients to BLS for testing and related services.  To disguise those bribes, BLS and defendant GARY SAFIER entered into sham lease and sham service agreements, pursuant to which thousands of dollars in monthly bribe payments to defendant GARY SAFIER were characterized as "lease" and "service" payments.  The lease

- 3 -

payments from BLS were substantially in excess of the fair market value of the space actually used by BLS at the Medical Practice, and the service payments from BLS were substantially in excess of the fair market value of the basic blood drawing tasks performed by the Medical Practice for BLS.

b.   Between in or about August 2007 and the summer of 2010, BLS used the sham lease agreements and sham service agreements to pay defendant GARY SAFIER bribes that, in the aggregate, exceeded $156,000.   In return, defendant GARY SAFIER, among other things, referred patient blood specimens to BLS that BLS used to submit claims to Medicare and the Private Payors and collect from those payors more than $1,500,000.

c.   The claims BLS submitted for blood testing and other services to Medicare and the Private Insurers included charges for tests on blood specimens defendant GARY SAFIER referred to BLS in return for bribe payments.

d.   In or about January 2009, Blue Cross/Blue Shield paid BLS - by check mailed to and received by defendant BLS - approximately $110,000 on claims and related items previously submitted by defendant BLS for blood testing on Blue Cross/Blue Shield insureds. Approximately $1,350 of the $110,000 was for claims by BLS for testing blood specimens referred to BLS by defendant GARY SAFIER.

e.   When a change in New Jersey law was enacted in July 2010 that effectively prohibited even legitimate lease and

service payments from clinical blood laboratories to physicians, the sham lease and sham service agreements were ended, and David Nicoll caused BLS to continue bribing defendant GARY SAFIER cash payments that, at times, exceeded $10,000 per month.  These payments included a cash payment by BLS per test for several specific tests ordered by defendant GARY SAFIER.

    f.  In or about December 2012, David Nicoll caused approximately $14,125 in cash to be delivered to defendant GARY SAFIER to induce defendant GARY SAFIER to refer the blood specimens of patients to BLS for testing and related services.

    g.  The total amount of bribes paid to defendant GARY SAFIER between August 2007 and March 2013 under the sham lease agreements, sham service agreements, and in cash exceeded $353,000.  In return, defendant GARY SAFIER referred blood specimens to BLS during that same period that BLS used to submit claims to Medicare and the Private Payors and collect from those payors more than $2,000,000.

    In violation of Title 18, United States Code, Section 1952(a)(3) and Title 18, United States Code, Section 2.

## COUNT 2
(Filing of a False Tax Return)

1.   Paragraphs 1 and 2(e) through 2(g) of Count One of this Information are realleged as if set forth in full herein.

2.   During calendar years 2010 and 2011 the defendant GARY SAFIER failed to disclose and report as income any of the cash bribes he received from BLS on his United States individual or corporate tax returns filed for those years, thereby causing those tax returns to understate an amount of the income that he received.  In this fashion, defendant GARY SAFIER failed to report at least approximately $90,000 in income from BLS upon which an additional tax was due and owing to the United States. Specifically:

a.   The return defendant GARY SAFIER filed for calendar year 2010 did not include approximately $20,000 in additional income defendant GARY SAFIER received, as cash, from BLS in 2010.  Upon this income, an additional tax of approximately $7,441 was due and owing the United States.

b.   The return defendant GARY SAFIER filed for calendar year 2011 did not include approximately $70,000 in additional income defendant GARY SAFIER received, as cash, from BLS in 2011.  Upon this income, an additional tax of approximately $26,045 was due and owing the United States.

3.   On or about April 15, 2012, defendant GARY SAFIER signed, filed, and caused to be filed with the Internal Revenue

Service the 2011 Tax return, which contained a written declaration that it was signed under penalties of perjury.

4.   As set forth in paragraph 2.b, above, the 2011 tax return was not true and correct in every material matter, in that the return failed to report a significant portion of the income that defendant GARY SAFIER received, as cash, from BLS during calendar year 2011, upon which a substantial tax was due and owing.

5.   On or about April 15, 2012, in ~~FILL IN~~, Morris County N.J. in the District of New Jersey, and elsewhere, defendant

GARY SAFIER

did knowingly and willfully make and subscribe a 2011 United States Individual Income Tax return, Form 1040, as described in paragraph 2.b of this information, which he did not believe to be true and correct as to every material matter, as described in paragraph 4 of this Information.

In violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATION

1. The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2. Upon conviction of the offense in violation of Title 18, United States Code, Sections 1952(a)(3) and 2, the defendant, GARY SAFIER, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all right, title, and interest in the sum of $353,152.84, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense of conviction.

3. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

- 8 -

982(a)(7), to forfeiture of any other property of the defendant, GARY SAFIER, up to the value of the property described in the preceding paragraph.

PAUL J. FISHMAN
UNITED STATES ATTORNEY

CASE NUMBER:

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

GARY SAFIER

# INFORMATION

18 U.S.C. §1952(a)(3) and 2
26 U.S.C. §7206(1)

**PAUL J. FISHMAN**
U.S. Attorney Newark, New Jersey

ANDREW LEVEN
JACOB T. ELBERG
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
973.645.2700